IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MOLD-EX. INC.,
 Plaintiff,

v.                Case No. 3:04cv307/MCR/MD

MICHIGAN TECHNICAL
REPRESENTATIVES, INC.,
 Defendant,
_____/

**O R D E R**

  In this diversity action plaintiff seeks a declaratory judgment as to the rights and obligations of the parties under a prior sales representation agreement. Defendant has filed a motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue and motion to transfer. After considering the arguments of counsel and relevant case law, the court determines that it does not have personal jurisdiction over the defendant and that the case should be transferred to the United States District Court for the Eastern District of Michigan.

**Background**

  Plaintiff Mold-Ex, Inc (Mold-Ex) is engaged in the business of manufacture, sale and distribution of molded rubber products for use in the automotive industry, including sunroof seals, throughout the United States.  Since 1989, Mold-Ex's manufacturing facility and corporate headquarters have been located in Milton, Florida.  Defendant Michigan Technical Representatives, Inc. (MTR) is engaged in the business of representing manufacturers in the solicitation of orders from automotive and industrial concerns for automotive products and servicing the relationship between the manufacturers and customers filling such orders.  MTR is a Michigan corporation with its principal place of business in Troy, Michigan.

On or about September 1, 1998, Mold-Ex's predecessor, Southland Technologies, Inc., and MTR entered into a Sales Representation Agreement in which MTR agreed to represent Southland as a sales representative for its molded rubber products in the solicitation of orders from automotive concerns throughout the country for a term of six years.[1]  During the life of the contract MTR's president Richard Stover acted as the primary contact and business developer between Mold-Ex and its various customers.  In this capacity Stover communicate daily with Mold-Ex employees in Florida via telephone and facsimile transmission regarding customer issues, and he periodically traveled to the Mold-Ex plant in Florida for business meetings.

On June 22, 2000, Southland Technologies, Inc., sold substantially all of its Mold-Ex division assets, including the Sales Representation Agreement ("Agreement") with MTR, to Mold-Ex.  The Asset Purchase Agreement and the Bill of Sale and Assignment expressly stated that the Sales Representation Agreement was sold and assigned to Mold-Ex.  The Agreement provided that no changes, additions or deletions to any portion of that Agreement would be valid or binding on either party unless such changes were in writing and signed by all parties.  The Agreement automatically expired on August 31, 2004, pursuant to its written terms, and, as of October 15, 2004, Mold-Ex had paid MTR $154,745.65 for all commissions due through August 31, 2004.  Despite this, MTR has made claims to Mold-Ex for commissions beyond August 31, 2004, based on an oral "life of the part" agreement that MTR alleges supercedes the Agreement.  Based on the parties' inability to resolve this issue, Mold-Ex filed the instant action on September 1, 2004, seeking a declaratory judgment.[2]

---

[1] By its own terms the contract was to be construed and enforced under Virginia law.

[2] Mold-Ex seeks a declaratory judgment that (1) the Agreement governs the relationship between the parties through its termination, (2) the Agreement terminated on August 31, 2004, (3) Mold-Ex owes no commissions to MTR on sales (as defined under the Agreement), and (4) Virginia law governs the Agreement. Three weeks after the instant suit was filed, MTR filed a lawsuit in federal court in Michigan claiming that it was owed commissions through August 31, 2004, as well as additional commissions for the "life of the part" pursuant to an alleged verbal agreement entered into in July 2000. In the Michigan case MTR has named

**Discussion**

**Motion to Dismiss - Lack of Personal Jurisdiction**

To survive a motion to dismiss for lack of personal jurisdiction when no evidentiary hearing is conducted, the plaintiff must establish a prima facie case of jurisdiction over the nonresident defendant. <u>Precision Software Servs., Inc. v. Fortune Fin. Sys., Inc.</u>, 1998 WL 1759759 at *3 (M.D. Fla. 1998) (citing <u>Cable/Home Communication Corp. v. Network Prods., Inc.</u>, 902 F.2d 829, 855 (11th Cir. 1990)). The plaintiff's prima facie case must be sufficient to defeat a motion for a directed verdict. <u>Id.</u> In determining whether such a prima facie case is established, the court must accept the facts in the complaint as true to the extent they are not controverted by defendant's affidavits. <u>Lauzon v. Joseph Ribkoff, Inc.</u>, 77 F.Supp.2d 1250, 1253-1254 (S.D. Fla. 1999); <u>Cable/Home Communication</u>, 902 F.2d at 855. Where the evidence conflicts, the court is required to view all reasonable inferences in plaintiff's favor. <u>Id.</u> Once the plaintiff pleads sufficient material facts to support the exercise of in personam jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other competent evidence. <u>Lauzon</u>, 77 F.Supp.2d at 1254 (citing <u>Prentice v. Prentice Colour, Inc.</u>, 779 F.Supp. 578, 585-586 (M.D. Fla. 1991)). If the defendant sustains his burden, the plaintiff is required to substantiate the allegations in the complaint by affidavits or other competent evidence and not simply reiterate the factual allegations presented in the complaint. <u>Id.</u> (citing <u>Prentice</u>, 779 F.Supp. at 586; <u>Murphy v. Republic Health Corp.</u>, 645 F.Supp. 124 (S.D. Fla. 1986)).

The Eleventh Circuit has developed a two-part analysis to determine if personal jurisdiction exists over a nonresident defendant. <u>Precision Software Servs.</u>, 1998 WL 1759759 at *4 (citing <u>Cable/Home Communication</u>, 902 F.2d at 856)). First the court must examine the jurisdictional issue under the Florida long-arm

---

SETi, the parent corporation of Mold-Ex, as defendant. SETi is not a party in the instant case. The Michigan case is currently stayed pending resolution of the motion to dismiss that is the subject of this order. See <u>Michigan Technical Representatives, Inc. v. Specialty Elastomers Technologies, Inc.</u>, Civil Action No. 2:04cv73648 (E.D. Mich. 2004).

statute. Id. Second, the court must determine whether "minimum contacts" exist to satisfy the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not 'offend traditional notions of fair play and substantial justice" as set forth in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Id. (citations omitted). The minimum contacts requirement is satisfied if the defendant "purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state." Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So. 2d 716, 719 (Fla. 4th Dist. Ct. App. 1998); see also Burger King v. Rudzewicz, 471 U.S. 462 (1985); Hanson v. Denckla, 357 U.S. 235 (1958). Only if the court determines there is a basis for asserting personal jurisdiction under the long-arm statute does it consider the due process analysis. Nida Corp. v. Nida, 118 F.Supp.2d 1223, 1228 (M.D. Fla. 2000).

*Florida Long-Arm Statute*

The Florida long-arm statute provides two categories of personal jurisdiction: specific jurisdiction conferred under § 48.193(1) and general jurisdiction conferred under § 48.193(2). Miller v. Berman, 289 F.Supp.2d 1327, 1331 (M.D. Fla. 2003) (citing Northwestern Aircraft Capital Corp. v. Stewart, 842 So.2d 190, 193 (Fla. 5th DCA 2003) (internal citations omitted)). A court may exercise general jurisdiction over a nonresident defendant when the suit does not arise out of the nonresident's activities in the forum state. Helicopteros Nacionales de Colombia S. A. v. Hall, 466 U.S. 408, 414-415 (1984)). A court may exercise specific jurisdiction over a nonresident defendant only when the defendant's contacts with the forum state arise from or are directly related to the cause of action. Norwood v. Teather, 2005 WL 723863 at *3 (citing Helicopteros, 466 U.S. at 414).

Florida's long-arm statute is to be strictly construed. Id. (citing Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 891 (11th Cir. 1983)). Pursuant to Florida law, the plaintiff bears the burden of proving personal jurisdiction: "When a defendant raises through affidavits, documents or testimony

a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." Id. (citing Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110, 1112 (11th Cir. 1990)).

   1. § 48.193(1)(a)

Section 48.193(1)(a) allows courts sitting in Florida to obtain jurisdiction over a nonresident if the nonresident

> operated, conducted, engaged in, or carried on a business or business venture in this state or has an office or agency in this state....

See Fla. Stat. §§ 48.193(1)(a); Snow v. DirecTV, Inc., 2005 WL 1226157 at *1. In order to establish that a defendant is carrying on a business or business venture in Florida either itself or through an agent, "[t]he activities of the [defendant] sought to be served...must be considered collectively and show a general course of business activity in the state for pecuniary benefit." Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996) (citing Dinsmore v. Martin Blumenthal Assocs. Inc., 314 So.2d 561, 564 (Fla. 1975)). Factors relevant to, but not dispositive of, this analysis include the presence and operation of an office in Florida; the possession and maintenance of a license to do business in Florida; the number of Florida clients served; and the percentage of overall revenue gleaned from Florida clients. Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 2005 WL 2008995 (11th Cir. 2005) (internal citations omitted).

None of the relevant factors cited above are present in this case: there is no evidence that MTR has established or operated an office in Florida; that it is represented by a corporate agent here; or that it possesses or maintains a license to do business in Florida. Furthermore, there is no evidence regarding the number of Florida clients MTR serves or the percentage of its overall revenue which is derived from Florida clients. Additionally, it is undisputed that the agreements that are the subject of the underlying declaratory judgment action were negotiated and/or executed in Michigan, that the services MTR provided were performed in Michigan and involved Michigan accounts; and that MTR has not performed services in

Florida. (See doc. 8, exh. 2, affidavit of Richard Stover). While MTR may have had "continuous" telephonic and electronic communications with Mold-Ex at its office in Milton, Florida, as plaintiff contends (see doc. 17, Exhs. A-D), such communications cannot constitute "conducting business" in Florida for purposes of satisfying the long-arm statute. Horizon Aggressive Growth, 2005 WL 2008995 (citing Sculptchair, Inc., 94 F.3d at 628 (finding that making phone calls from Canada to Florida did not amount to "conducting business" in Florida)). Similarly, that MTR sold automotive parts on behalf of Mold-Ex throughout the United States, as plaintiff further argues, (id.) does not support a conclusion that MTR was engaged in a business venture in Florida.  In sum, upon review of the record and based on the factors relevant to a determination of jurisdiction pursuant to § 48.193(1)(a), the court concludes that it may not properly exercise personal jurisdiction over MTR pursuant to a theory of specific jurisdiction under § 48.193(1)(a).

   2. *§ 48.193(2)*

Section 49.193(2) provides that the court may exercise personal jurisdiction over a nonresident who is

> engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

See Fla. Stat. §§ 48.193(2); Snow v. DirecTV, Inc., 2005 WL 1226157 at *1.

This general jurisdiction statute does not require connectivity between a defendant's activities and the cause of action. Woods v. Nova Cos. Belize Ltd., 739 So. 2d 617, 620 (Fla. 4th Dist. Ct. App. 1999) (citing Helicopteros Nacionales de Colombia S. A. v. Hall, 466 U.S. 408, 416 (1984)).  A court may exercise general jurisdiction over a nonresident defendant when the suit does not arise out of the nonresident's activities in the forum state. Helicopteros, 466 U.S. at 414-415. Because the extent of the Florida long-arm statute is governed by Florida law, federal courts are required to construe it as would the Florida Supreme Court.

Sculptchair, 94 F.3d at 627.  Pursuant to Florida law, Florida courts have held "substantial and not isolated activity" to mean "continuous and systematic general business contact" with Florida.  Autonation, Inc. v. Whitlock, 276 F.Supp.2d 1258, 1262 (S.D. Fla. 2003)(citing Woods, 739 So. 2d at 620).  The "continuous and systematic" contacts requirement is sufficient to fulfill the constitutional due process requirement of "minimum contacts." Id.  Thus, because § 48.193(2) requires this high threshold, if a defendant's activities meet the statutory requirements of § 48.193(2), the minimum contacts standard is also satisfied.  Woods, 739 So. 2d at 620.

In response to MTR's motion, Plaintiff argues that MTR's role as sales agent for Mold-Ex has required daily and continuous contact with Mold-Ex in Florida for over fifteen years and that MTR's president traveled to Florida twice per year for sales meetings during that time.  (Doc. 17, p. 2).  Plaintiff further argues that all commissions paid to MTR came from Florida and that the Mold-Ex products sold by MTR were shipped from Florida.  Mold-Ex claims that all these actions, taken collectively, are sufficient to establish general jurisdiction over the defendant.

In support of its argument that continuous contact by MTR with Mold-Ex is sufficient for a finding of general jurisdiction over MTR, plaintiff relies in part upon Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So. 2d 716 (Fla. 4th Dist. Ct. App. 1998) and Autonation, Inc. v. Whitlock, 276 F.Supp.2d 1258 (S.D. Fla. 2003).  In Achievers, plaintiff alleged that one of the defendants fell within the Florida long-arm statute because she engaged in substantial and not isolated activities within Florida.  Id. at 720; see also Fla. Stat. § 48.193(2).  Defendant was a California distributor for Achievers for three years.  Id.  She consistently ordered one or two cases of products from Achievers each month, sent order forms to Florida where the products were shipped from, operated a distribution center for Achievers in California, and had phone contact with Achievers up to several times per week.  Id. The court held that defendant's actions constituted "continuous and systematic general business contacts" with Florida sufficient to fall within the ambit of

§48.193(2) of the Florida long-arm statute.  The court went on to hold that such activities also comported with constitutional due process requirements such that personal jurisdiction could have been exercised over this defendant.  Id.

Similarly, in Autonation, Inc. v. Whitlock, 276 F.Supp.2d 1258 (S.D. Fla. 2003), the court held that defendant had continuous and systematic business activities with Florida sufficient to satisfy § 48.193(2).  Specifically, the court found that defendant had worked for plaintiff for six months in Florida prior to being transferred to another location of plaintiff's business in Georgia; had attended six meetings in Florida over the course of the next five years; had ongoing business contacts with plaintiff in Florida regarding his work, including communications regarding customer complaints and transmission of business information and policies.  Id. at 1263.  Because defendant's activities met the requirements of § 48.193(2), the minimum contacts requirement of the Due Process Clause of the Fourteenth Amendment was also met and the court could therefore exercise personal jurisdiction over the defendant.  Id.  In making this finding, the court noted that it was defendant's activities taken collectively over a five year period, as opposed to any single activity alone, that established personal jurisdiction.  Id.  Based upon these holdings, plaintiff argues that MTR is subject to personal jurisdiction pursuant to § 48.193(2) of the Florida long-arm statute.

In determining the appropriate time period for assessing whether a defendant's contacts with a forum state are sufficient to exercise general jurisdiction, a review of general jurisdiction cases by other courts shows that contacts are commonly assessed over a period of years prior to the filing of a complaint.  See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1996) (reviewing defendant's contacts with forum state over a six year period); Wilson v. Belin, 20 F.3d 644, 650-51 (5th Cir. 1994) (analyzing defendant's contacts with forum state over a five year period); Gates LearJet Corp. v. Jensen, 743 F.2d 1325, 1330-31 (9th Cir. 1994) (examining defendant's contacts over a three year period to determine exercise of general jurisdiction); Helicopteros, 466 U.S. at

**409-11 (reviewing contacts over a seven year period prior to the filing of the complaint).**

**The contacts by MTR in the instant case are significantly less than those in <u>Achievers</u> and <u>Autonation</u>. In <u>Achievers</u>, the defendant had been a distributor of the plaintiff for several years, ordered products from the plaintiff to be shipped to her from Florida; operated a distributorship for plaintiff in another state; and later became a distributor for another Florida company. In <u>Autonation</u>, the defendant had previously worked for the plaintiff in Florida; had attended meetings in Florida in connection with his job with plaintiff; and most significantly, received direction and instruction from plaintiff regarding his work in Georgia as well as job-related paperwork for his execution. In comparison, MTR's only contact with the State of Florida was its long-term contractual relationship (entered into out of state) with a Florida plaintiff which required it to find buyers for the plaintiff in markets other than Florida and to service those out of state relationships from Michigan. These contacts are far too attenuated to support a finding of continuous and systematic contacts with the State of Florida under § 48.193(2).[3]**

**For the foregoing reasons, accepting the facts of the complaint as true, the court concludes that Mold-Ex has failed to meet its burden of establishing a prima facie case that this court has personal jurisdiction over MTR under either § 48.193 (1)(a) or § 48.193(2). Accordingly, MTR's motion to dismiss for lack of personal jurisdiction shall be granted. Furthermore, given the court's lack of personal**

---

[3] Because the court has determined there is no basis for personal jurisdiction over MTR under Florida's long-arm statute, it need not consider whether assertion of personal jurisdiction would offend due process. See <u>Nida Corp. v. Nida</u>, 118 F.Supp.2d 1223, 1228 (M.D. Fla. 2000). Nonetheless, were such a determination required, the court would find insufficient minimum contacts between MTR and the State of Florida to satisfy the Due Process Clause. See <u>Burger King Corporation v. Rudzewicz</u>, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); <u>Sculptchair, Inc. v. Century Arts, Ltd.</u>, 94 F.3d 623 (11th Cir. 1996); <u>Sea Lift, Inc. v. Refinadora Costarricense De Petroleo, S.A.</u>, 792 F,2d 989 (11th Cir. 1986); <u>Hydrokinetics, Inc. v. Alaska Mechanical, Inc.</u>, 700 F.2d 1026 (5th Cir. 1983); <u>Scullin Steel Company v. National Railway Utilization Corp.</u>, 676 F.2d 309 (1982). Further, federal case law would not support a finding of continuous and systematic contacts between MTR and Florida for purposes of federal due process. See <u>Helicopteros Nacionales de Columbia S. A.. v. Hall</u>, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); <u>Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen</u>, 197 F.3d 1070 (11th Cir. 1999); <u>United States v. Swiss American Bank, Ltd.</u>, 274 F.3d 610 (1st Cir. 2001); <u>Dickson Marine Incorporated v. Panalpina, Inc.</u>, 179 F.3d 331 (5th Cir. 1999).

jurisdiction over defendant and the fact that a substantial part of the events giving rise to the claim did not occur in this district, the court concludes that, in the interest of justice, the case should be transferred to the United States District Court for the Eastern District of Michigan where MTR is a resident and subject to personal jurisdiction. See 28 U.S.C. § 1406(a).  Moreover, because there is another action currently pending in that court involving similar claims and parties as the instant case, the court finds that transfer is warranted to avoid duplicative or piecemeal litigation.

        **Accordingly, it is hereby ordered:**

1. Defendant's motion to dismiss for lack of subject matter jurisdiction, personal jurisdiction and improper venue (doc. 7) is GRANTED;

2. Defendant's motion to transfer this case is GRANTED pursuant to 28 U.S.C. § 1406(a).  The clerk shall transfer this action to the United States District Court for the Eastern District of Michigan, Southern Division .

**ORDERED on this 30th day of September, 2005.**

        *s/ M. Casey Rodgers*
        **M. CASEY RODGERS**
        **UNITED STATES DISTRICT JUDGE**